**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

FILED
UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

06 FEB 22 PM 4: 50

CLERK-LAS CRUCES

KEITH LAWRENCE BENDER,

Plaintiff,

v.                                                   Civ. No. 04-0502 JB/WPL

CORNELL CORRECTIONS/DIRECTOR,
MEDICAL STAFF, NURSES, PHYSICIANS UNKNOWN,
WARDEN IN CAPACITY WILFRED ROMERO,
And as of yet 6 UNKNOWN CORRECTIONAL OFFICERS,

Defendants.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Keith Bender, who is incarcerated and proceeding *pro se* and *in forma pauperis*, filed this action alleging violations of his civil rights under 42 U.S.C. § 1983 and New Mexico state law. This matter is before me on Defendant Cornell Corrections's (Cornell's) Motion for Summary Judgment and the pleadings in support of or in opposition to that Motion.[1]  For the reasons that follow, I recommend that Cornell's Motion for Summary Judgment be granted.

### PROPOSED FINDINGS

#### FACTUAL AND PROCEDURAL BACKGROUND

Bender claims that Defendants violated his civil rights by failing to provide him with medical treatment, failing to inform him of the results of medical tests and procedures, destroying his documents, mis-mailing his documents and other property, negligently hiring, training, and supervising its employees, destroying and losing complaints and grievances he filed, and frustrating

---

[1] Cornell's Memorandum of Law in Support, Bender's Amended Complaint, Cornell's Answer, Cornell's Reply, Bender's Memorandum in Opposition, Bender's Motion and Reply, Cornell's second Reply, and Bender's Reply.

35

his attempts to exhaust administrative remedies. [Doc. 1; Doc. 13]

At the time the events which gave rise to this lawsuit allegedly occurred, Bender was incarcerated at the Santa Fe County Adult Detention Center (SFADC). [Doc. 26 at 3]  He claims that his requests for medical attention were denied following a fall in February 2000 which injured his back. [Doc. 1]  He was not seen for several days following this incident, during which time he suffered "increased swelling" and "numbness, headache, tingling, and other related symptoms." *Id.* He states that he was "at some point" given aspirin, but it was insufficient to treat his condition and his requests for further medical attention were denied. *Id.*  On May 12, 2000, Bender was given an x-ray, but the results were not divulged or explained to him. *Id.*  He alleges that Cornell did not make these x-rays available to him until August 2001 and that he had to decipher them himself. *Id.* He claims that he was therefore unaware of the scope and nature of his medical condition. [Doc. 13]

Bender alleges that Cornell employees retaliated against him and told him to "just wait" or "file another grievance" when his grievances went unanswered. [Doc. 13]  He also alleges that Cornell seized and destroyed documents he planned to use in legal proceedings. [Doc. 1]  He further claims that Cornell took custody of his documents and other property and mis-mailed them in an attempt to hide its actions. *Id.*

On August 2, 2005, the Court dismissed four of Bender's claims for failure to file within the limitations period and ordered him to file a response or amended complaint to cure defects in his original complaint. [Doc. 8]  Bender filed a Motion for Reconsideration [Doc. 14], which was granted [Doc. 15]. The Court noted that Bender had presented evidence demonstrating that he may have attempted to exhaust administrative remedies, which may have tolled the statute of limitations. *Id.*  The Court vacated the prior order and reinstated the four claims that had been dismissed. *Id.*

2

Cornell filed an Answer [Doc. 18], a Motion for Summary Judgment and Memorandum of Law in Support [Doc. 23], a Reply [Doc. 24], and another Reply [Doc. 29]. Bender filed a Memorandum in Opposition [Doc. 26], a Motion and Reply [Doc. 27], and a Reply [Doc. 31].

Bender attached several documents to his Motion for Reconsideration [Doc. 14] and Memorandum in Opposition [Doc. 26] purporting to show that he attempted to file grievances but was prevented from doing so by Cornell employees. Bender attached the following documents to his Motion for Reconsideration, not including duplicates: a letter to Cornell requesting copies of his grievances [Doc. 14 Ex. 1a-b]; a letter requesting copies of his medical records [Ex. 2a-b]; a "Certification of Identity" filled out by Bender [Ex. 2c]; an "Inmate Communication Form" stating "I am not being given my medication for my back" [Ex. 4a]; a medical request form listing "back pain" and "finger infected" [Ex. 3a] and another listing what appears to be "sinus infection" and "back pain" [Ex. 5a]; and an "Inmate Inquiry" form showing an account balance [Ex. 7].

Bender attached the following to his Memorandum in Opposition [Doc. 26], not including duplicates from his Motion for Reconsideration: a letter to Cornell requesting confirmation of receipt of a letter of intent to file suit [Ex. 5a]; what appears to be a demand for judgment [Ex. 5b]; a letter from the U.S. Marshals Service regarding the location of Bender's property [Ex. 7a]; a letter to "Medical Department Staff" requesting that x-rays be sent to his correctional institution for diagnosis [Ex. 9a]; a diagnostic imaging report regarding Bender's spine [Ex. 10a]; and an article regarding medical care at SFADC [Ex. 13a].

Bender also attached two affidavits to his Memorandum in Opposition. The first, signed by Leroy Bender, stated that Bender complained of back pains and that, "I understand that [Keith Bender's] requests for medical attention from Cornell Corrections were ignored." [Doc. 26 Ex. 11a]

3

The other affidavit was signed by Ramona Bender and averred, "Keith stated that . . . Cornell Corrections in Santa Fe, N.M. was refusing his requests and grievances." *Id.* Ex. 12a. It also stated, "I personally spoke to Keith Bender several times we visited him at Cornell Corrections and also saw his medical journal he was using for documentation." *Id.*

Following the completion of briefing on the Motion for Summary Judgment, this case was referred to me. [Doc. 33]

**STANDARDS OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The court examines the factual record and makes all inferences in a light most favorable to the non-moving party. *Munoz v. St. Mary-Corwin Hosp.*, 221 F.3d 1160, 1164 (10th Cir. 2000).

The party moving for summary judgment has the burden to demonstrate an absence of evidence supporting the non-moving party's case. *Id.* The moving party must identify the portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the non-moving party must identify specific facts showing the existence of a genuine issue of material fact. *Munoz*, 221 F.3d at 1164. There is no genuine issue "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289

4

(1968)). It is not sufficient that the evidence brought forward by the non-moving party is "merely

colorable" or anything less than "significantly probative." *Hall v. Bellmon*, 935 F.2d 1106, 1111

(10th Cir. 1991) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)).

## EXHAUSTION

The Prisoner Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with

respect to prison conditions under section 1983 . . . by a prisoner . . . until such administrative

remedies as are available are exhausted." 42 U.S.C. 1997e(a). The PLRA's exhaustion requirement

applies to all inmate suits about prison life. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The Tenth

Circuit has held that exhaustion is an essential allegation of a prisoner's claim, not an affirmative

defense. *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209 (10th Cir. 2003). To meet his

burden, a prisoner must (1) plead a short and plain statement showing that he is entitled to relief, in

compliance with Fed. R. Civ. P. 8(a)(2), and (2) provide copies of the applicable administrative

dispositions, or, in their absence, describe with specificity his attempts to exhaust. *See id.* at 1210.

The burden of demonstrating exhaustion is on the plaintiff in the context of summary judgment

motions as well as motions to dismiss. *See Fry v. Al-Abduljalil*, No. 05-1179, 2006 WL 226025, at

*2 (10th Cir. January 31, 2006) (unpublished decision) (affirming the district court's grant of

summary judgment and citing *Steele*, 355 F.3d at 1209-10, for the proposition that "[t]he burden of

demonstrating exhaustion is on the plaintiff").

A plaintiff who begins the grievance process but does not complete it has not exhausted his

administrative remedies and is barred from bringing a § 1983 action. *Jernigan v. Stuchell*, 304 F.3d

1030, 1032 (10th Cir. 2002). The doctrine of substantial compliance does not apply to the

exhaustion requirement. *See id.* Inmates must exhaust available administrative remedies even if

5

they appear futile. *Booth v. Churner*, 532 U.S. 731, 740 & n.6 (2001). Giving notice to prison officials by means other than the established grievance process is not sufficient to exhaust available administrative remedies. *See Jernigan*, 304 F.3d at 1032. Section 1997e contains a total exhaustion requirement whereby the action must be dismissed for failure to exhaust administrative remedies unless all of the prisoner's claims have been exhausted. *Ross v. County of Bernalillo*, 365 F.3d 1181, 1188-89 (10th Cir. 2004).

Cornell attached two exhibits to its Motion for Summary Judgment. Exhibit B is the affidavit of Linda Lecroy-Ortega. [*See* Doc. 23 Ex. B] She states that she was a Records Custodian at SFADC from 1999 to 2000. *Id.* She avers that the documents contained in Exhibit A constitute the inmate grievance policies and procedures in effect at the time of the incident giving rise to this action. *Id.* She found no record that Bender filed any grievances in 2000. *Id.*

Exhibit A contains two grievance policies and two inmate grievance forms. [Doc. 23 Ex. B] There is a policy promulgated by Cornell along with a "Cornell Corrections Inmate Grievance Form." *See id.* The other policy appears to be promulgated by the New Mexico Corrections Department, and there is an attached "Inmate Grievance Form." *See id.* Neither the motion nor the affidavit states which policy applies.

The Cornell policy explains that the SFADC shall designate an employee as the Grievance Coordinator, who is responsible for processing grievances and appeals. *Id.* The grievance procedure is made available to all inmates, regardless of disciplinary, classification, or other administrative status. *Id.*

The inmate must file a grievance within ten working days of the date of the incident. *Id.* The Grievance Officer then has five working days to initiate and conduct an investigation into the subject

6

of the grievance. *Id.*  After completing the investigation, the Grievance Officer forwards his recommendation to the Administrative Supervisor, who approves or denies the recommendation within five working days of the conclusion of the Grievance Officer's investigation. *Id.*  The inmate has five working days to appeal the decision at the Senior Warden's level. *Id.*  The Senior Warden reviews all appeals within seven working days and provides a written response with the final decision to the inmate. *Id.*

According to the second policy attached to the Motion for Summary Judgment, inmates are expected to attempt to resolve the grievance informally with the person responsible for the incident. *Id.*  If this attempt does not resolve the grievance within five days, the inmate may file a written grievance with the institutional Grievance Officer. *Id.*  The inmate must file the grievance within fifteen calendar days of the date of the incident. *Id.*  To file a grievance, the inmate must fill out and sign an Inmate Grievance Form and submit it to the Grievance Officer. *Id.*  Copies of grievances sent to persons other than the Grievance Officer are considered informational and do not require a response. *Id.*  Inmate grievance forms are to be readily available to inmates at all times. *Id.*  The inmate must submit a separate grievance form for each issue grieved. *Id.*  Grievances that are untimely, incomplete, or otherwise improperly submitted are returned to the inmate with an explanation. *Id.*  In the event of a transfer, the inmate is to attempt to file a grievance with the grievance officer at the appropriate facility. *Id.*  A Grievance Officer who receives a grievance which should be submitted at another institution should forward the grievance to the Grievance Officer at the appropriate institution and notify the inmate. *Id.*

The Grievance Officer is to conduct an investigation and complete his portion of the Inmate Grievance Form. *Id.*  The Grievance Officer's report and recommendation is given to the Warden

7

for review within twenty calendar days of the receipt of the grievance, and a copy is given to the inmate. *Id.* Any disposition recommended by the Grievance Officer is approved or disapproved by the Warden. *Id.* The Warden or a designee will review the grievance and make a decision within fifteen calendar days of receipt of the grievance. *Id.* The inmate is to be informed in writing of the decision within the same fifteen days. *Id.* Included is a brief and clear explanation of the reasons for the Warden's decision and notice of the procedure by which the prisoner may appeal to the Secretary or designee for final review. *Id.*

To appeal the Warden's decision, the inmate must complete the "appeal" portion of the Inmate Grievance Form and submit it to the Grievance Officer within five calendar days of receipt of the Warden's decision. *Id.* The Grievance Officer notes the date of receipt, attaches all relevant materials, and delivers the appeal to the Grievance Coordinator within five calendar days of receipt of the appeal portion of the Inmate Grievance Form. *Id.* The Grievance Coordinator conducts further investigation if necessary and presents a recommendation to the Secretary or designee within twenty-five calendar days of receiving the appeal portion of the Inmate Grievance Form. *Id.* The Secretary or designee will render a final decision within ten calendar days of receipt of the appeal portion of the grievance form. *Id.* The inmate is informed in writing of the decision and given a brief and clear description of the reasons for the decision. *Id.*

**DISCUSSION**

Cornell claims that there is no reason to address the undecided state law issue of whether attempts to exhaust administrative remedies toll the statute of limitations because there are other grounds on which to dismiss this action. [Doc. 23 at 6-8] Cornell argues that Bender has failed to

demonstrate that he has exhausted his available remedies for Counts I through IV.[2] *Id.* It argues that Counts V through VIII should be dismissed because Bender failed to comply with a court order to provide dates for the incidents he alleged. *Id.* at 8-9. It claims that Count VIII, raised for the first time in the amended complaint, should be dismissed. *Id.* Alternatively, it states that Counts V through VIII should be dismissed for failure to meet the total exhaustion requirement. *Id.* Cornell did not address Count IX, but I will address it *sua sponte.*

***Counts I through IV***

Cornell argues that Bender has not demonstrated that he has exhausted available administrative remedies for these claims. [Doc. 23 at 6-8] Bender was notified in the Order filed October 7, 2004, that his claims in Counts I through IV were being reinstated but that exhaustion remained at issue. [Doc. 15] Bender has provided several documents purporting show that he attempted to file grievances but was prevented from doing so by Cornell staff. [*See* Doc. 14 Ex. 1a through 7; Doc. 26 Ex. 5a through 13a]

The requirement of particularized descriptions of exhaustion applies to cases where a plaintiff alleges that he has met the exhaustion requirement because he attempted to exhaust administrative remedies but was impeded by prison officials. *See Snyder v. Whetsel*, No. 04-6242, 152 F. App'x 730, 731-32 (10th Cir. Oct. 19, 2005) (unpublished decision). In *Snyder,* the district court dismissed three claims for failure to exhaust administrative remedies. *Id.* at 731. The plaintiff alleged that

---

[2] Bender has had ample notice that he must demonstrate that he exhausted available administrative remedies or his claims would be dismissed. The Order filed on October 7, 2004 [Doc. 8], as well as the Motion for Summary Judgment [Doc. 23], notified him that the exhaustion requirement was at issue in this case. Bender presented arguments that he met the exhaustion requirement in his Amended Complaint [Doc. 13], Motion for Reconsideration [Doc. 14], and Memorandum in Opposition [Doc. 26]. Although Cornell is the only defendant that has been served and the only defendant that has filed for summary judgment, the analysis that follows applies to claims against the other defendants as well as Cornell.

9

prison officials did not respond to his requests and refused to provide grievance forms. *Id.* at 732.
He argued that he met the exhaustion requirement by attempting to exhaust available administrative
remedies. *Id.* The court noted that his attempts "amounted to general allegations that he had
submitted requests to staff that were never answered, and general allegations that he had requested
grievance forms that were not provided." *Id.* He did not, however, with respect to the claims that
were dismissed, "make the particularized averments of exhaustion that our case law requires." *Id.*
at 732 (citing *Steele*, 355 F.3d at 1211).

Bender has not met his burden of demonstrating that he exhausted available administrative
remedies. Like the plaintiff in *Snyder*, Bender has merely raised general allegations that Cornell
rendered administrative remedies unavailable. He states that he "filed several requests and
grievances" and that when he asked about them he was told to "file another grievance" or "just wait"
[Doc. 13] Bender's statements are not sufficiently specific to meet his burden to demonstrate
exhaustion regardless of which inmate grievance policy applies.

The affidavits of Leroy Bender [Doc. 26 Ex. 11a] and Ramona Bender [Doc. 26 Ex. 12a] are
not proper evidence to demonstrate that Bender's grievances were ignored. It is true that "[m]aterial
factual disputes cannot be resolved at summary judgment based on conflicting affidavits." *Hall*, 935
F.2d at 1111. However, to be within this rule the affidavits must be based upon personal knowledge
and set forth facts that would be admissible in evidence. *Id.* Conclusory and self-serving affidavits
are not sufficient. *Id.*

Ramona Bender avers that Keith Bender stated that Cornell was refusing his requests and
grievances. [Doc. 26 Ex. 12a] While she may have personal knowledge that the statement was
made, she would not be allowed to testify about the subject matter of the statement, as she had no

10

personal knowledge of it. *See Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1123 (10th Cir. 2005);
FED R. EVID. 602. Testimony by Ramona Bender regarding Keith Bender's statement would be
inadmissible hearsay if offered to prove that Bender's requests and grievances were denied. *See
Echo Acceptance Corp. v. Household Retail Servs., Inc.*, 267 F.3d 1068, 1087 (10th Cir. 2001); FED.
R. EVID. 801(c). Therefore, I cannot consider this affidavit for the purpose of determining whether
Cornell refused Bender's grievances since it does not set forth facts that would be admissible in
evidence. *See Hall*, 935 F.2d at 1111.

Leroy Bender's statement that he "understand[s]" that Keith Bender's requests were ignored
is not based on personal knowledge and therefore is not proper evidence to show that Bender's
grievances were improperly denied. *See Bryant*, 432 F.3d at 1123. Further, if this "understand[ing]"
is based on statements made to Leroy Bender by Keith Bender, it would be inadmissible hearsay.
*See Echo Acceptance*, 267 F.3d at 1087. In any event, both affidavits lack sufficient specificity to
meet the exhaustion requirement.

Nor do any of the other documents Bender attached to his pleadings demonstrate that he
exhausted available administrative remedies. At most, they do no more than suggest the sort of
general allegations that were found inadequate in *Snyder*. *See Snyder*, 152 F. App'x at 731-32. They
fail to demonstrate with specificity his attempts to exhaust.

Because I recommend that Bender's claims be dismissed for failure to exhaust administrative
remedies, I need not address whether the statute of limitations was tolled for Bender's claims in
Counts I through IV.

### *Counts V through VIII*

Cornell argues that Bender's claims in Counts V through VIII should be dismissed under the

11

total exhaustion requirement [Doc. 23 at 9], which requires that an action be dismissed unless all of the prisoner's claims have been exhausted. *Ross*, 365 F.3d at 1188-89. I agree and recommend that these claims be dismissed. Cornell also argues that Counts V through VIII should be dismissed because Bender failed to comply with the Court's order to provide dates for the incidents alleged in those counts and in consideration of the fact that the events alleged in Counts I through IV occurred nearly five years ago. [Doc. 23 at 8-9] Since I recommend that these counts be dismissed for failure to exhaust, I need not address this argument. I also note that Count VII, which appears to allege a violation of state law, should be dismissed if Bender's other claims are dismissed. *See* 28 U.S.C. § 1367(c)(3).

These counts should also be dismissed because Bender failed to demonstrate that he exhausted administrative remedies with respect to any of these claims. *See Snyder*, 152 F. App'x at 731-32. Count VI merits further discussion because it involves incidents alleged to have occurred during Bender's transfer from SFADC to another facility. [*See* Doc. 1] Bender alleges in Count VI that during his transfer from Cornell to Sandoval County a Cornell employee took custody of Bender's documents and other property and intentionally mis-mailed them. *Id.* The actions Bender alleges in Count VI occurred after he was incarcerated at Cornell. It is not clear from the policies submitted by Cornell how the grievance process works in such a situation. The second policy presented by Cornell requires a transferred inmate to pursue administrative remedies with the institution responsible for the incident. [Doc. 26 Ex. B]. The other policy does not appear to address the grievance procedure in the case of transfer of prisoners.

This Court has ruled that a prisoner must exhaust administrative remedies even if "incarcerated at a different facility than the one in which the alleged incident occurred." *Kiro v.*

12

*Moore*, No. CIV 03-1223, Mem. Op. and Order (Doc. 22), at 10 n.4 (D.N.M. filed Apr. 28, 2005)

(unpublished decision) (relying on *Medina-Claudio v. Rodriguez*, 292 F.3d 31 (1st Cir. 2002), and

*Turrietta v. Barreras*, No. 02-2343, 91 F. App'x 640 (10th Cir. Feb. 5, 2004) (unpublished

decision)).  Bender has failed to show exhaustion for this claim.  Under the total exhaustion

requirement, Bender's claim in Count VI must in any event be dismissed because he has not

exhausted all of his claims. *See Ross*, 365 F.3d at 1188-89.

***Count IX***

Cornell did not address Count IX in its Motion for Summary Judgment.  However, a court

is required to dismiss on its own motion or that of a party actions which fail to state a claim. *See* 42

U.S.C. § 1997e(c)(1). Exhaustion is an essential allegation of a prisoner's claim and a complaint that

fails to allege exhaustion is tantamount to one that fails to state a claim upon which relief may be

granted. *See Steele*, 355 F.3d at 1209-10.  Bender has had ample notice that he must demonstrate

exhaustion or risk dismissal. *See supra* note 1.  He has not demonstrated that he exhausted available

administrative remedies for this claim.  In addition, this claim should be dismissed based on the total

exhaustion requirement.[3] *See Ross*, 365 F.3d at 1188-89.

**RECOMMENDED DISPOSITION**

For the reasons stated herein, I recommend that:

(1) Cornell's Motion for Summary Judgment [Doc. 23] be GRANTED, and

(2) Plaintiff's Complaint [Doc. 1] be DISMISSED WITHOUT PREJUDICE for failure to

exhaust administrative remedies.

---

[3] Had Bender met the exhaustion requirement for any of his claims, I would recommend that he be given the opportunity to dismiss the unexhausted claims and proceed with his exhausted claims. *See West v. Kolar*, No. 03-6265, 108 F. App'x 568, 570 (10th Cir. Aug. 17, 2004) (unpublished decision). I need not do so, however, since Bender has not exhausted any of his claims.

13

> **THE PARTIES ARE NOTIFIED THAT WITHIN 10 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636 (b)(1). **A party must file any objections with the Clerk of the District Court within the ten day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

WILLIAM P. LYNCH
UNITED STATES MAGISTRATE JUDGE

14

Slip Copy
Slip Copy, 2006 WL 226025 (10th Cir.(Colo.))
**(Cite as: 2006 WL 226025 (10th Cir.(Colo.)))**

Page 1

Only the Westlaw citation is currently available.

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
Richard D. FRY, Plaintiff-Appellant,
v.
Diane AL-ABDULJALIL, M.D.; Captain Rod Buxman; Sergeant Rocky Smith; and Sergeant Dave Bell, Defendants-Appellees.
No. 05-1179.

Jan. 31, 2006.

**Background:** Prisoner who was legally blind brought action against correctional officers and prison doctor, alleging that failure to place prisoner in single-occupancy cell amounted to deliberate indifference in violation of prisoner's Eighth Amendment rights. The United States District Court for the District of Colorado granted summary judgment in favor of defendants. Prisoner appealed.

**Holdings:** The Court of Appeals, Mcconnell, Circuit Judge, held that:

(1) prisoner failed to exhaust his administrative remedies with respect to deliberate indifference claim against correctional officers, and

(2) prisoner failed to show physical injury as required under Prison Litigation Reform Act (PLRA).

Affirmed.

**[1] Federal Civil Procedure 0**

170Ak0 k.

Prisoner who was legally blind failed to exhaust his administrative remedies with respect to deliberate indifference claim against correctional officers, alleging that officers failed to provide prisoner with single-occupancy cell following assault by cellmate, and thus, claim was barred under the Prison Litigation Reform Act (PLRA); prisoner never filed grievance

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                    Page 2
Slip Copy, 2006 WL 226025 (10th Cir.(Colo.))
**(Cite as: 2006 WL 226025 (10th Cir.(Colo.)))**

concerning request for single-occupancy cell, or regarding the injuries he suffered following the assault, and there was no showing that grievance process was not available for such claim, or that prisoner was unable to file grievance because of his blindness. U.S.C.A. Const.Amend. 8;Prison Litigation Reform Act of 1995, § 7, 42 U.S.C.A. § 1997e(a).

**[2] Federal Civil Procedure 0**
170Ak0 k.
Prisoner failed to show that he sustained physical injury while in custody as result of alleged poisoning by cellmate, as required under the Prison Litigation Reform Act (PLRA) to proceed with Eighth Amendment claim that failure to place prisoner in single-occupancy cell amounted to deliberate indifference and resulted in his poisoning. U.S.C.A. Const.Amend. 8; Prison Litigation Reform Act of 1995, § 7, 42 U.S.C.A. § 1997e(c).

Lee T. Judd, Andrew T. Brake, P.C., Englewood, CO, for Plaintiff-Appellant.

Tara K. Weinman, Jennifer L. Veiga, Melanie Bailey Lewis, David R. Brougham, Hall & Evans, Denver, CO, for Defendants-Appellees.

Before McCONNELL, ANDERSON, and BALDOCK, Circuit Judges.

**ORDER AND JUDGMENT [FN*]**

MICHAEL W. McCONNELL, Circuit Judge.

*1 After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Richard D. Fry appeals the district court's grant of summary judgment in favor of appellees on his 42 U.S.C. § 1983 claims. He also appeals the district court's denial of his motion for reconsideration. We have jurisdiction under 28 U.S.C. § 1291, and we AFFIRM.

**I**

Mr. Fry is legally blind. Upon his arrival at Fremont Correctional Facility in May 1997, he requested assignment to a single-occupancy cell because of his impairment. His request was denied, and Mr. Fry was

assigned to a double-occupancy cell with Spencer Peterson as his cell mate. Mr. Fry contends that Mr. Peterson engaged in a campaign of harassment against him. Mr. Fry alleges that he repeatedly contacted defendants Buxman, Smith and Bell to complain about Mr. Peterson's harassment, and to request a single-occupancy cell. His requests were denied.

In December 1997, Mr. Fry and Mr. Peterson were involved in a physical altercation, which caused injuries to Mr. Fry ("the Peterson incident"). Mr. Fry was housed in another facility for medical treatment after the Peterson incident, but returned to Fremont in February 1998. At that time, he was housed in a cell with Mike Dewine, despite again requesting that he be assigned to a single-occupancy cell. He alleges that he became ill with stomach problems, and that Mr. Dewine caused these problems by placing foreign substances in his drinks ("the Dewine incident"). In November 1998, defendant Al-Abduljalil recommended that Mr. Fry be given a single-occupancy cell.

In December 1999, Mr. Fry filed a complaint against appellees and several other defendants, alleging that they failed to protect him from harm resulting in injury during the Peterson incident and the Dewine incident. After amending his complaint several times, two Eighth Amendment claims remained pending against the parties to this appeal: 1) that Buxman, Smith, and Bell were deliberately indifferent and grossly negligent by failing to assure Mr. Fry's safety and address his serious medical needs; and 2) that Dr. Al-Abduljalil acted with deliberate indifference to Mr. Fry's serious medical needs and health and safety when she denied Mr. Fry's request for a single-occupancy cell.

The district court granted summary judgment in favor of appellees based on its determination that Mr. Fry failed to exhaust his administrative remedies with respect to the Peterson incident, and that he failed to establish that he suffered any physical injury as a result of the Dewine incident. Mr. Fry filed a motion for reconsideration of the district court's order granting summary judgment, which the district court denied.

**II**

We review de novo the district court's grant of summary judgment in favor of appellees, applying the same standards as the district court. See Orr v. City of Albuquerque, 417 F.3d 1144, 1148 (10th Cir.2005). We review for abuse of discretion the district court's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy
Slip Copy, 2006 WL 226025 (10th Cir.(Colo.))
(Cite as: 2006 WL 226025 (10th Cir.(Colo.)))

Page 3

denial of the motion for reconsideration. *See Matosantos Commercial Corp. v. Applebee's Int'l, Inc., 245 F.3d 1203, 1213 (10th Cir.2001).*

### Exhaustion of Administrative Remedies

**\*2** [1] An inmate must exhaust all available administrative remedies before filing suit. 42 U.S.C. § 1997e(a). The exhaustion requirement applies to all suits regarding prison life, whether they challenge general circumstances or particular issues. *See Porter v. Nussle,* 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). The burden of demonstrating exhaustion is on the plaintiff. *See Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204, 1209-10 (10th Cir.2003).

The district court determined that Mr. Fry had never filed a grievance concerning his request for a single-occupancy cell, or regarding the injuries he suffered after the Peterson incident. Mr. Fry essentially argues that he did not have to exhaust any administrative remedies with respect to his request for a single-occupancy cell because the grievance procedure does not apply to those kinds of "classification" issues. Aplt. Br. at 18. On appeal, Mr. Fry does not provide any record support for this assertion. Similarly, in the district court, Mr. Fry did not provide a definition of classification or explain how his request constituted a classification issue. In contrast, the appellees did provide the following definitions from the Department of Corrections administrative regulation: 1) "Classification" is "[t]he judgmental and discretionary process whereby an inmate is regularly reviewed to determine the level of custody and facility assignment," and 2) "Custody level" is "[t]he degree of supervision required for each inmate utilizing the terms of minimum, minimum restricted, medium, close, and administrative segregation." Aplt.App., Vol. II at 338. As the district court correctly noted, "nothing in the definition of 'classification' suggests that the decision to assign an inmate to a single- or double-occupancy cell falls within its definition." *Id.* at 430.

The district court also noted that, even if Mr. Fry's request was a classification issue, the grievance procedure states that there is an appeal process available with regard to classification issues, but Mr. Fry did not demonstrate that he exhausted that process. In the district court, Mr. Fry simply argued that he did not need to exhaust his administrative remedies because the grievance procedure was not applicable to classification issues. Mr. Fry now argues for the first time on appeal that he did exhaust the separate

classification appeal process by making verbal requests that he be reassigned to a single-occupancy cell. Again, he does not offer any record support for his argument. Aplt. Br. at 18-19. Moreover, he did not make this argument before the district court. Accordingly, this argument is waived. *See Smith v. Rogers Galvanizing Co.,* 128 F.3d 1380, 1385-86 (10th Cir.1997) ( "Generally, we will not consider an issue that was not raised and resolved in the trial court.")

Finally, Mr. Fry asserts that he was unable to file a grievance because he is legally blind and therefore the administrative remedies were not available to him. *See* 42 U.S.C.1997e(a) ("No action shall be brought ... until such administrative remedies as are *available* are exhausted." (emphasis added)). Mr. Fry fails to explain, however, how he was able to file at least two other grievances during this same period of time. He filed one grievance after the Peterson incident claiming that some of his personal items were missing when he returned from medical treatment, and he filed another grievance related to the Dewine incident. Because Mr. Fry was able to use the grievance procedure on other occasions, he has not demonstrated that the administrative remedies were not available to him.

### Physical Injury Requirement

**\*3** [2] Mr. Fry did file a grievance with respect to the Dewine incident. The district court determined, however, that Mr. Fry had not satisfied the physical injury requirement in 42 U.S.C. § 1997e(e). That section states: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody *without a prior showing of physical injury.*" *Id.* (emphasis added). Mr. Fry asserts that he did make a showing of physical injury. He contends that he submitted an affidavit in which he stated that he suffered stomach problems due to chemicals being placed in his drink by Mr. Dewine. He also asserts that an unidentified doctor at Fremont verbally confirmed his self-diagnosis.

In response to summary judgment, Mr. Fry made the following statement: "Mr. Fry became ill with stomach problems, and believes it is a result of Mr. Dewine placing cleaning solutions in Mr. Fry's drinks. The doctor verbally confirmed Mr. Fry's suspicions. Please see Exhibit 'A', ¶ 12." Aplt.App., Vol. II at 249. Exhibit A is Mr. Fry's affidavit, which states: "I was going to the doctor for stomach problems, and believed that Mr. Dewine was putting cleaning solutions in my

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                    Page 4
Slip Copy, 2006 WL 226025 (10th Cir.(Colo.))
**(Cite as: 2006 WL 226025 (10th Cir.(Colo.)))**

drinks. The doctor confirmed my belief." *Id.* at 259.

Mr. Fry's personal conclusions regarding his stomach problems are insufficient to demonstrate a triable issue of fact for the purpose of overcoming summary judgment. *Fitzgerald v. Corrections Corp. of America, 403 F.3d 1134, 1143 (10th Cir.2005); see also Kayser v. Caspari, 16 F.3d 280, 281 (8th Cir.1994)* (stating that an inmate's self-diagnosis alone cannot establish that he suffered from kidney stones). Moreover, the statements that a doctor confirmed the basis for his stomach problems directly contradicts the following testimony from his deposition:

Q. Okay. *Did any physician or medical professional diagnose you as having any injury as a result of ingesting the cleaning fluids?*

A. It was making me sick. I was vomiting. *I wasn't diagnosed,* but I was sick, okay. It didn't do me no good I know that.

Q. I understand you were sick, but *did anybody ever pinpoint the cause of that sickness to your knowledge?*

A. *Well, no.* When the P.A. told me about the single cell order, in my own head I thought, well, I'm getting away from this guy so I didn't push it.

Aplt. App, Vol. I at 126 (emphasis added).

Mr. Fry failed to come forward with evidence sufficient to demonstrate a triable issue of fact as to whether he actually suffered any injury traceable to defendants' conduct.

### Motion for Reconsideration

Mr. Fry filed a motion for reconsideration with the district court challenging the district court's determination that he had not exhausted his administrative remedies. In his motion for reconsideration, he argued that the written grievance procedure was not available to him because of his visual impairment. The district court denied the motion for reconsideration because this argument existed at the time of his response to summary judgment and could have been presented at that time. Moreover, the district court noted that Mr. Fry had invoked the written grievance procedure at least twice, rebutting his assertion that the procedure was not available to him. As discussed *supra,* we agree that Mr. Fry did not demonstrate that the grievance procedure was unavailable to him. The district court did not abuse its discretion in denying the motion for reconsideration.

*4 The judgment of the district court is AFFIRMED.

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Slip Copy, 2006 WL 226025 (10th Cir.(Colo.))

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

152 Fed.Appx. 730
152 Fed.Appx. 730
(Cite as: 152 Fed.Appx. 730)

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
Tony Lorenzo SNYDER, Plaintiff-Appellant,
v.
John WHETSEL, Sheriff sued in his individual
capacity;  Johnny Dirck, sued in
his individual capacity;  Cliff Uranga, Captain sued
in his individual
capacity;  Bobby Carson, Captain sued in his
individual capacity;  A. Harmon,
Oklahoma City police officer sued in his individual
capacity;  John Does 1-7,
Detention Officers sued in their individual capacities;
Carpenter, Detention
Officer sued in his individual capacity;  Grannada,
sued in his individual
capacity;  Jane Doe, sued in her individual capacity;
Shoopman, Detention
Officer sued in his individual capacity, Defendants-
Appellees.
No. 04-6242.

Oct. 19, 2005.

**Background:** Pretrial detainee brought pro se § 1983 action, against sheriff and detention officers. The United States District Court for the Western District of Oklahoma dismissed excessive force and conspiracy claims for failure to exhaust administrative remedies and remaining claims for failure to state claim, and also denied detainee's motion for appointment of counsel. Detainee appealed.

**Holdings:** The Court of Appeals, Tymkovich, Circuit Judge, held that:

(1) detainee failed to make requisite particularized averments of administrative exhaustion for his excessive force and conspiracy claims, and

(2) district court did not abuse its discretion in declining to appoint counsel.

Affirmed.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

152 Fed.Appx. 730                                                                                    Page 2
152 Fed.Appx. 730
(Cite as: 152 Fed.Appx. 730)

West Headnotes

[1] Civil Rights 1395(7)

78k1395(7) Most Cited Cases

Allegations that pretrial detainee submitted requests to detention center staff that were never answered and requested grievance forms that were not provided did not satisfy requirement, under Prison Litigation Reform Act (PLRA), that detainee make particularized averments of administrative exhaustion with respect to his § 1983 claims alleging conspiracy and use of excessive force, supporting dismissal of claims without prejudice for failure to exhaust administrative remedies. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

[2] Civil Rights 1445

78k1445 Most Cited Cases

District court did not abuse its discretion when, after considering pertinent factors, it declined to appoint counsel for pretrial detainee in his § 1983 action against sheriff and detention officers, notwithstanding detainee's assertions that he was litigating from a cell, without a law library, and was unable to establish exhaustion of administrative remedies without assistance of attorney. 42 U.S.C.A. § 1983.

*731 Tony Lorenzo Snyder, Oklahoma City, OK, pro se.

Before HENRY, ANDERSON, and TYMKOVICH, Circuit Judges.

## ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

TYMKOVICH, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Pro se plaintiff Tony Lorenzo Snyder appeals the district court's dismissal of his 42 U.S.C. § 1983 civil rights complaint, and that court's denial of his request for appointment of counsel. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

Mr. Snyder's eleven-count complaint alleges that while he was a pretrial detainee in the Oklahoma County Detention Center defendants violated certain of his rights guaranteed by the United States Constitution. The district court adopted the magistrate judge's report and recommendation, dismissing without prejudice counts one, two, and six, concerning excessive force and conspiracy, for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a), and dismissing without prejudice the remaining eight counts for failure to state a claim under Fed.R.Civ.P. 12(b)(6) and 8(a). [FN1] The district court, by separate order, also denied Mr. Snyder's motion for appointment of counsel. This appeal, in which Mr. Snyder challenges the dismissal of counts one, two, and six, and the denial of his motion to appoint counsel, followed.

> FN1. When a prisoner's complaint concerning prison conditions contains one or more unexhausted claims, the district court usually must dismiss the complaint in its entirety and without prejudice to refiling. Ross v. County of Bernalillo, 365 F.3d 1181, 1189, 1190 (10th Cir.2004); 42 U.S.C.1997e(a) (prohibiting an "action" from proceeding until available administrative remedies are exhausted). But where, as here, "a claim ... fails to state a claim upon which relief can be granted, ... the court may dismiss the underlying claim without first requiring the exhaustion of administrative remedies," Ross, 365 F.3d at 1190 n. 13 (quoting § 1997e(c)(2)).

We review a district court's decision regarding exhaustion de novo. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002). We review a district court's denial of a motion for appointment of counsel in a civil case for abuse of discretion. Rucks v. Boergermann, 57 F.3d 978, 979 (10th Cir.1995). Because Mr. Snyder is representing himself, we construe his

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

pleadings liberally. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).

[1] The Prison Litigation Reform Act (PLRA) requires prisoners to timely and completely exhaust available administrative remedies before filing suit under 42 U.S.C. § 1983 concerning prison conditions. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); *Jernigan*, 304 F.3d at 1032. In a § 1983 action, the burden is on the prisoner to sufficiently plead exhaustion, which includes supplying supporting documentation of exhaustion, or in its absence, describing with specificity prison grievance proceedings. *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1209-10 (10th Cir.2003), *cert. denied*, **732**543 U.S. 925, 125 S.Ct. 344, 160 L.Ed.2d 222 (2004).

Mr. Snyder asserts that the district court erroneously dismissed counts one, two, and six because he attempted to exhaust his administrative remedies. Our review of the record reveals that Mr. Snyder's attempts amounted to general allegations that he had submitted requests to staff that were never answered, and general allegations that he had requested grievance forms that were not provided. His complaint did not, with respect to counts one, two, or six, make the particularized averments of exhaustion that our case law requires. *See id.* at 1211 (stating that action must be dismissed under § 1997e where particularized averments concerning exhaustion are absent). We therefore see no error in the district court's dismissal without prejudice of these three counts for failure to exhaust administrative remedies.

[2] Mr. Snyder also challenges the district court's denial of his motion for appointment of counsel, claiming that he "litigated from a cell ... without [a] law library ... [which] is unfair on its face," Aplt. Br. at 19. In a similar vein, he argues that, without counsel, he has been unable to demonstrate his attempts to exhaust administrative remedies. "The appointment of counsel in a civil case is left to the sound discretion of the district court." *Shabazz v. Askins*, 14 F.3d 533, 535 (10th

Cir.1994). The district court in this case considered the factors pertinent to deciding whether to appoint counsel and found appointment of counsel unnecessary. *See Rucks*, 57 F.3d at 979 (listing factors). Our review leads us to conclude that the district court did not abuse its discretion in reaching that conclusion.

Mr. Snyder's motion to proceed on appeal in forma pauperis is GRANTED, and we remind him that he remains obligated to make partial payments until the entire appellate filing fee is paid. Both the district court's July 15, 2004, order dismissing Mr. Snyder's civil rights complaint without prejudice to refiling, and that court's July 7, 2004, order denying Mr. Snyder's motion for appointment of counsel, are AFFIRMED. The mandate shall issue forthwith.

152 Fed.Appx. 730

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

ROBERT PATRICK KIRO,

     Plaintiff,

v.                               No. CIV 03-1223 JB/ACT

BILLY W. MOORE, ERNEST C.
BECENTI, JR. AND HARRY H.
MENDOZA, BOARD OF COUNTY
COMMISSIONERS OF THE COUNTY
OF MCKINLEY, MANAGEMENT &
TRAINING CORPORATION, INC.,
a Delaware Corporation; MATTHEW
"CODY" GRAHAM; SHANNON
SILVERSMITH; ROSANDA MARIANO;
AND UNKNOWN PERSONS 1 through 100,

     Defendants.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss Pursuant to the Prison Litigation Reform Act, filed August 16, 2004 (Doc. 11). The Court held a hearing on this matter on April 21, 2005. The primary issue is whether the Plaintiff, Robert Patrick Kiro, has properly pled exhaustion of administrative remedies and thus compliance with the Prison Litigation Reform Act ("PLRA"). Consistent with the Court's ruling at the hearing on this motion, and for the reasons given at the time of the hearing, and because the Complaint does not indicate that Kiro made any effort to comply with the PLRA's exhaustion requirements, the Court will grant the Defendants' motion in part, dismiss the federal claims, and remand the remaining claims -- all of which sound in

state law -- to state court.[1]

## FACTUAL BACKGROUND

Kiro's Complaint alleges that five inmates assaulted and beat up Kiro at the McKinley County Adult Detention Center on September 25, 2001, while he was incarcerated there as a pre-trial detainee. See Complaint for Damages Due to a Deprivation of Rights Secured by the Constitution and Laws of the United States and New Mexico Pursuant to the Tort Claims Act (NMSA 1978, §§ 41-4-1 et seq.), And Pursuant to the Federal Civil Rights Act of 1871 (42 U.S.C. § 1983); And, Complaint for Damages Due to Common Law Negligence, No. CV-2003-340-11, ¶¶ 29-30, at 5 (11th Judicial Dist., McKinley County, New Mexico)(hereinafter, "Complaint"). The five inmates fractured Kiro's left cheekbone, causing his left eyeball to drop approximately two millimeters. See id. ¶ 31, at 5. Kiro's vision in his left eye is permanently impaired. See id. ¶ 37, at 6. He cannot see at a distance with his left eye. See id. ¶ 38, at 6. He has a permanent brown scar under his left eye. See id. ¶ 39, at 6.

At the time of the assault, Kiro was in the McKinley County Adult Detention Center as a "pre-trial detainee," id. ¶¶ 1, 9, at 1, 3, while he was awaiting trial on charges of murdering a Gallup

---

[1] In his Response, Kiro requests leave to "amend his complaint to state that there was no grievance procedure available to him." Response in Opposition to Defendants' Motion to Dismiss Pursuant to the Prison Litigation Reform Act ¶ 4, at 2. At the hearing on this motion, the Court expressed its inclination to grant Kiro the right to file a motion for leave to amend the federal claims to comply with the PLRA. In response, however, Kiro's counsel represented that, rather than allowing leave to amend the Complaint, he would prefer that the Court dismiss the federal claims without providing leave to amend and, instead, immediately remand the state law claims to state court. See Transcript of Hearing at 8:13-17; id. at 14:7-14; id. at 14:22 - 15:17. Accordingly, the Court will not include in its Order the ability to amend the Complaint and, instead, will dismiss all federal claims.

The Court's citations to the transcript of the hearing refer to the Court Reporter's original, unedited version. Any finalized transcript may contain slightly different page and/or line numbers.

City police officer during a domestic violence incident.[2]  Kiro pled guilty on August 13, 2004, to second degree murder in connection with the death of the Gallup police officer.[3]  Kiro is now a prisoner committed to the custody of the Corrections Department of the State of New Mexico and was when he filed his Complaint.  Kiro remains in the Corrections Department's custody and will remain in its custody for the foreseeable future.

## PROCEDURAL BACKGROUND

Kiro filed his Complaint in state district court on September 22, 2003.  Kiro's Complaint seeks monetary damages and not any prospective relief.  See Complaint at 11.  Kiro's Complaint asserts that the Defendants are liable to him, pursuant to 42 U.S.C. § 1983 and under New Mexico state law, for their failure to protect him from other inmates.  See id. ¶¶ 40-70, at 6-11.

Kiro's Complaint does not contain any allegation that he attempted to or did exhaust his administrative remedies before filing suit.  Kiro's Complaint is based on the conditions of his confinement at the McKinley County Adult Detention Facility.  Kiro's Complaint does not show any compliance with the PLRA, 42 U.S.C. § 1997e, which is required for a prisoner to maintain a cause of action under the laws or Constitution of the United States based upon prison conditions.

The Defendants removed the case to federal court on October 22, 2003.  See Doc. 1.  The Defendants have answered and asserted Kiro's failure to comply with the PLRA, by raising the defense of failure to exhaust administrative remedies.  See MTC's Answer, Seventeenth Defense, at

---

[2] The Defendants, in their motion, do not offer any evidence to support on which charges Kiro was being held.  Kiro, however, at the hearing on this motion, made the same factual representation to the Court.  See Transcript of Hearing at 15:2-9.

[3] The Defendants do not offer support for this representation, but Kiro's counsel affirmed this sequence of events in his recitation of the facts at the hearing on this motion.  See Transcript of Hearing at 15:2-9.

7 (Doc. 7); McKinley County's Answer, Seventeenth and Eighteenth Defenses, at 8 (Doc. 2).

The Defendants move the Court, pursuant to rule 12(c) of the Federal Rules of Civil Procedure and the PLRA, 42 U.S.C. § 1997e, for an order dismissing the action. Under the authority of <u>Steele v. Federal Bureau of Prisons</u>, 355 F.3d 1204, 1212 n.4 (10th Cir. 2003), the Defendants bring their motion as a motion for judgment on the pleadings. Kiro opposes the motion. While Kiro asks for leave to amend, Kiro has not made a motion or asked opposing counsel's consent.

## STANDARDS GOVERNING MOTIONS TO DISMISS

Subsection (c) of rule 12 of the Federal Rules of Civil Procedures states:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c).

A court dismisses an action pursuant to rule 12(c) under the same standard of review applicable to a rule 12(b)(6) motion. <u>See</u> <u>McHenry v. Utah Valley Hosp.</u>, 927 F.2d 1125, 1126 (10th Cir. 1991). A court will dismiss a claim under rule 12(c) only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957). <u>See</u> <u>Ramirez v. Dep't of Corr.</u>, 222 F.3d 1238, 1241 (10th Cir. 2000); <u>Sutton v. Utah State Sch. for the Deaf and Blind</u>, 173 F.3d 1226, 1236 (10th Cir. 1999); <u>Huxall v. First State Bank</u>, 842 F.2d 249, 250-51 (10th Cir. 1988).

## 42 U.S.C. § 1997e(c)(1)

The PLRA requires a prisoner to exhaust available administrative procedures and remedies

-4-

before filing suit for redress of alleged violation of rights based upon prison conditions which is brought pursuant to 42 U.S.C. § 1983. The PLRA provides in § 1997e(a): "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement is mandatory. See Booth v. Churner, 532 U.S. 731, 741 (2001); Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir. 2001).

In Booth v. Churner, a state prisoner brought a § 1983 action alleging use of excessive force by prison guards in violation of the Eighth Amendment. See 532 U.S. at 734. The district court dismissed for failure to exhaust administrative remedies, which the United States Court of Appeals for the Third Circuit affirmed. See id. at 735. The Supreme Court, in affirming the Third Circuit's decision, held that the PLRA requires administrative exhaustion, even where the grievance process does not permit an award of monetary damages and the prisoner-plaintiff seeks only money damages. See id. at 734, 741 & n.6. The Supreme Court indicated that the grievance tribunal need only have authority to take some action. See id. at 736.

The Supreme Court held that the language of the PLRA's exhaustion requirement applies to all available procedural remedies, not merely to a particular species of redress. See id. at 734, 741 & n.6. The Supreme Court found that, whether the plaintiff filed a claim for monetary or non-monetary relief or both, the prison's grievance procedure is still considered available and the prisoner must exhaust it to comply with the PLRA. See id. at 736, 741. This requirement remains applicable "regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible," because one "'exhausts' processes, not forms of relief." Id. at 739. As the Supreme Court stated:

Congress's imposition of an obviously broader exhaustion requirement makes it highly implausible that it meant to give prisoners a strong inducement to skip the administrative process simply by limiting prayers for relief to money damages not offered through administrative grievance mechanisms.

Thus, we think that Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures.

Id. at 740-41.

In the Tenth Circuit, "a prisoner must plead exhaustion in his complaint." Steele v. Fed. Bureau of Prisons, 355 F.3d at 1209. The exhaustion requirement applies to claims such as the one Kiro has brought in this case. See Porter v. Nussle, 534 U.S. 516, 520, 532 (2002)(holding that exhaustion requirement applied to inmate's claims that corrections officers beat him without justification). The PLRA applies to MTC. See, e.g., Murphy v. Jones, No. 01-35336, 2001 WL 1450636, at **1 (9th Cir. Nov. 15, 2001)(unpublished decision)(concluding that the PLRA's plain language mandates its application to private facilities); Pischke v. Litscher, 178 F.3d 497, 500 (7th Cir. 1999).

In keeping with Booth v. Churner and Porter v. Nussle, the Tenth Circuit is committed to strict adherence to the PLRA's exhaustion requirements. See Jernigan v. Stuchell, 304 F.3d 1030, 1033 (10th Cir. 2002)(warning against "trivializ[ing] the Supreme Court's holding . . . that exhaustion is now mandatory"); Yousef v. Reno, 254 F.3d at 1221. In Yousef v. Reno, in dismissing the plaintiff's case for failure to exhaust administrative remedies for a claim based in monetary relief, the Tenth Circuit stated:

The Supreme Court's holding in Booth [v. Churner] forecloses [the plaintiff's] argument. In Booth, the Court concluded that s 1997e(a) mandates exhaustion "regardless of the relief offered through administrative procedures." Booth v. Churner, [532 U.S. at 741] . . . . Furthermore, the Court rejected [the plaintiff's] suggestion that a futility exception should relieve him of the need to apply to an

-6-

> agency that allegedly has no power to decree relief: "we stress the point . . . that we
> will not read futility or other exceptions into statutory exhaustion requirements where
> Congress has provided otherwise." Id. at [741] n.6.

Yousef v. Reno, 254 F.3d at 1221.

Likewise, in Farrell v. Addison, 34 Fed. Appx. 650, 652 (10th Cir. Apr. 17,
2002)(unpublished decision), the Tenth Circuit found that "Congress's intent is made clear by the
specific and unqualified language of the statute, which mandates exhaustion in all suits 'brought with
respect to prison conditions.'" Id. at 652 (quoting 42 U.S.C. § 1997e(a)). The Tenth Circuit found
that it could not, "in the face of such a clear directive, weigh the fairness of the exhaustion
requirement or entertain exemptions from its reach." Farrell v. Addison, 34 Fed. Appx. at 652 (citing
Porter v. Nussle, 534 U.S. at 520, 532)(holding exhaustion required for all prisoner suits, regardless
whether they involve general circumstances of incarceration or particular episodes, and whether they
allege Eighth Amendment violation based on use of excessive force or some other wrongs).

The defendant does not have to prove that the plaintiff did not comply with the PLRA. See
Steele v. Fed. Bureau of Prisons, 335 F.3d at 1209-10. The Tenth Circuit places the burden on the
prisoner-plaintiff to plead exhaustion and compliance with the PLRA. See id. at 1210 ("[W]e
conclude that § 1997e(a) imposes a pleading requirement on the prisoner."). As the Tenth Circuit
has stated:

> "In the absence of particularized averments concerning exhaustion showing the nature
> of the administrative proceeding and its outcome, the action must be dismissed under
> § 1997e." Knuckles El [v. Toombs], 215 F.3d [640,] 642 [(6th Cir. 2000)]. To
> ensure compliance with the statute, a prisoner must provide a comprehensible
> statement of his claim and also either attach copies of administrative proceedings or
> describe their disposition with specificity.

Steele v. Fed. Bureau of Prisons, 335 F.3d at 1211. "Thus, a complaint that fails to allege the

requisite exhaustion of remedies is tantamount to one that fails to state a claim upon which relief may

be granted.'" Id. (quoting Rivera v. Allin, 144 F.3d 719, 731 (11th Cir. 1998)).

To state a claim in compliance with the PLRA, a prisoner must:

([i]) plead his claims with "a short and plain statement . . . showing that [he] is entitled
to relief," in compliance with Fed. R. Civ. P. 8(a)(2), and ([ii]) "attach[] a copy of the
applicable administrative dispositions to the complaint, or, in the absence of written
documentation, describe with specificity the administrative proceeding and its
outcome."

Steele v. Fed. Bureau of Prisons, 335 F.3d at 1210 (quoting Knuckles El v. Toombs, 215 F.3d at

642).

The PLRA applies to requests for monetary judgments. The Supreme Court has found that

plaintiffs seeking either or both kinds of relief must comply with PLRA's terms. See Booth v.

Churner, 532 U.S. at 740-41. The Supreme Court's decision in Booth v. Churner, however, does

not require inmates to exhaust administrative procedures that lack authority to provide any relief or

to take any action in response to a complaint. See id. at 736.

It is proper for the court to dismiss a prisoner's complaint where it shows on its face that the

plaintiff has not complied with the PLRA. In sum, unless an inmate-plaintiff exhausts administrative

remedies before filing suit, the court should dismiss the lawsuit. See Yousef v. Reno, 254 F.3d at

1216 n.1, 1222-23; Casanova v. Dubois, 289 F.3d 142, 147 (1st Cir. 2002). A court can dismiss a

complaint that does not comply with the PLRA's exhaustion requirement even in the absence of a

motion by the defendant. See 42 U.S.C. § 1997e(c)(1). That section requires courts to dismiss

actions that fail to state a claim, even without a defense motion. See Steele v. Fed. Bureau of

Prisons, 355 F.3d at 1210.

## AMENDMENT TO PLEADINGS

Local rule requires that a proposed amendment to a pleading accompany a motion to amend. See D.N.M.LR-Civ. 15.1.  Rule 15 of the Federal Rules of Civil Procedure requires that requests to amend pleadings be made by motion or consent of the parties.  See Fed. R. Civ. Proc. 15(a).

## SUPPLEMENTAL JURISDICTION

When a plaintiff originally files his case in federal court, dismissal of pendent state claims is appropriate when there is no longer a federal claim to support jurisdiction in the federal court.  See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d 1221, 1237 (10th Cir. 1997); Ball v. Renner, 54 F.3d 664, 669 (10th Cir. 1995).  See also United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966)("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  When a federal claim no longer supports supplemental jurisdiction, the Tenth Circuit has recognized that, consistent with 28 U.S.C. § 1367(c)(3), the ordinary response will be to dismiss the state law claims without prejudice.  See Roe v. Cheyenne Mountain Conference Resort, Inc., 124 F.3d at 1237; Ball v. Renner, 54 F.3d at 669.

## ANALYSIS

**I.    KIRO'S FEDERAL CLAIMS MUST BE DISMISSED BECAUSE THE FACE OF THE COMPLAINT DOES NOT INDICATE OR ADDRESS WHETHER KIRO ATTEMPTED TO EXHAUST ADMINISTRATIVE REMEDIES AS REQUIRED UNDER THE PLRA.**

Kiro must, as a matter of law, exhaust administrative remedies before filing this lawsuit, as his claims fall within the scope of the PLRA.  See, e.g., Porter v. Nussle, 534 F.3d at 520, 532;

-9-

Yousef v. Reno, 254 F.3d at 1221.[4]  It is not relevant to Kiro's responsibilities under the PLRA that

he seeks monetary as opposed to prospective relief.  This argument cannot defeat the Defendants'

motion.

Kiro's complaint does not, on its face, show that he complied with the PLRA or attempted

to comply with the PLRA.  The Complaint's allegations do not mention the Act, that Kiro filed any

grievance, or that he made any effort to meet the Act's exhaustion requirement.  Kiro did not address

the exhaustion requirement in his complaint.  He does not discuss grievance or exhaustion in his

complaint.  Kiro's Complaint does not allege compliance with the PLRA or that he attempted to

comply.  Specifically, Kiro's Complaint fails to state that he attempted any exhaustion.  As such, Kiro

---

[4] Before the hearing, the Court asked the parties to be prepared to discuss at the hearing, with
supporting authorities, whether Kiro must exhaust administrative remedies under the PLRA because
he is currently incarcerated at a facility different from the one in which the alleged assault occurred,
and, if so, at which facility he must exhaust such remedies.  See Minute Order, filed April 21, 2005
(Doc. 18).  At the hearing, the Defendants' counsel presented the Court a decision from the United
States Court of Appeals for the First Circuit, Medina-Claudio v. Rodriguez, 292 F.3d 31 (1st Cir.
2002), in which the First Circuit rejected "the proposition that an inmate who is transferred to a new
facility need not exhaust the administrative remedies of the first facility before filing suit against it or
against any of its employees." Id. at 35.  The First Circuit distinguished a prison transferred to
various facilities from a plaintiff who "is no longer a 'prisoner' by virtue of his release." Id.  The First
Circuit explained: "The fact that [the plaintiff] happened to be a prisoner in various locations, and
under the custody of different officials, does not affect his obligation to exhaust his administrative
remedies before filing suit." Id.  The Tenth Circuit, while not addressing the precise issue, rejected
a prisoner's contention that he could not file "a grievance because he was moved from jail to jail . .
. ." Turrietta v. Barreras, 91 Fed. Appx. 640, 641 (10th Cir. Fed. 5, 2004)(unpublished decision).
As the Tenth Circuit explained: "The mere fact that he was transferred and confined does not direct
the conclusion that he was thereby prevented from filing a grievance . . . ." Id.  Although the Tenth
Circuit did not expressly hold that transferred prisoners must exhaust the administrative remedies
under the PLRA before filing a lawsuit, the Tenth Circuit acknowledged that the alleged incident
occurred in a separate jail from the one in which he resided at the time he filed his complaint.  See id.
at 640.  Based on this case law, and statute's the plain language, the Court finds that, even though
Kiro is incarcerated at a different facility than the one in which the alleged incident occurred, he must
still exhaust administrative remedies before filing a lawsuit.  The Court need not, on this motion,
decide where or how he must exhaust his remedies.  Medina-Claudio v. Rodriguez, 292 F.3d at 35
(suggesting exhaustion must occur at the facility where the incident occurred).

-10-

did not meet the pleading requirements for sustaining his federal claim. See Steele v. Fed. Bureau of Prisons, 335 F.3d at 1210.

Kiro contends that, to his knowledge, the Defendants had no available administrative remedies and no grievance procedure that he could follow. Kiro also argues that there was no grievance system available that would have provided him with monetary damages, which is the only relief that he is seeking. See Snider v. Melindez, 199 F.3d 108, 113 n.2 (2d Cir. 1999)(stating that "the provision clearly does not require a prisoner to exhaust administrative remedies that do not address the subject matter of his complaint"). Kiro has not, however, filled in the gaps of his Complaint's failure to provide any averments concerning exhaustion. These statements in his brief certainly are not the "particularized averments" that the Tenth Circuit required in Steele v. Federal Bureau of Prisons. 355 F.3d at 1211. Kiro's unsupported response to the effect that there might not have been a grievance process available to him is not sufficient to meet his burden.

Because Kiro's Complaint does not allege any efforts to comply with the PLRA, the Court will dismiss his claims under 42 U.S.C. § 1983 as premature. See Booth v. Churner, 532 F.3d at 741. Therefore, at a minimum, the Court will dismiss Kiro's claims under 42 U.S.C. § 1983 and the laws and Constitution of the United States -- the Second Cause of Action and that part of the First Cause of Action based in federal law.

At the hearing, the Court indicated its willingness to allow Kiro to seek leave to amend his complaint to state that there was no grievance procedure available to him. In his Response, Kiro stated that the Court should allow him to amend his Complaint to state that there was no grievance procedure available to him. At the hearing, however, Kiro's counsel indicated that, rather than allowing leave to amend the Complaint, he would prefer that the Court dismiss the federal claims

-11-

without providing leave to amend and, instead, immediately remand the state law claims to state court. See Transcript of Hearing at 8:13-17; 14:7-14; 14:22 - 15:17. Accordingly, the Court will not include in its Order the ability to amend the Complaint and, instead, will dismiss all federal claims.

## II.    THE COURT WILL REMAND THE STATE LAW CLAIMS.

The Court has decided that Kiro did not comply with the PLRA, and because Kiro has declined the Court's invitation to amend his Complaint, the Court will dismiss his federal claim. Having dismissed the claim on which this Court had original jurisdiction, it will remand the state claims to state court, where Kiro originally filed the matter.

The Defendants contend that the Court should exercise its discretion to dismiss Kiro's pendent state claims. The Defendants do not, however, provide any reason for the Court to deviate from the general rule that state law claims should be remanded after federal claims are dismissed in a removed case.

Having dismissed the claim on which the Court had original federal jurisdiction, the Court, pursuant to 28 U.S.C. § 1367(c)(3), declines to exercise supplemental jurisdiction over the state law claims. See Pruitt v. Comcast Cable Holdings, LLC, 100 Fed. Appx. 713, 717 (10th Cir. June 3, 2004)(unpublished decision)(holding that the district court's refusal to exercise supplemental jurisdiction over plaintiff's state law contract claims after dismissing all federal claims was "clearly authorized under 28 U.S.C. § 1367(c)(3)"). Under 28 U.S.C. § 1367(a), "in any civil action of which the district courts have original jurisdiction, [a] district court[] shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States

-12-

Constitution." A district court, however, "may decline to exercise supplemental jurisdiction . . . if[:]"

> (1) the claim raises a novel or complex issue of State law,
>
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
>
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
>
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c). The third provision applies to this case. The Court has dismissed the claim on which it had original jurisdiction -- the § 1983 claim for malicious prosecution and false arrest. The remaining claims sound in state law.

The Supreme Court and the Tenth Circuit have not only acknowledged such a result, they have encouraged it. In <u>United Mine Workers of America v. Gibbs</u>, 383 U.S. 715 (1966), decided more than twenty years before Congress passed 28 U.S.C. § 1367, the Supreme Court addressed the federal district courts' ability to exercise jurisdiction over state law claims. In explaining that such power existed, the Supreme Court noted that it "need not be exercised in every case in which it is found to exist." <u>Id.</u> at 726. The Supreme Court continued:

> Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law. Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.

<u>Id.</u> (footnotes omitted). See <u>Bd. of County Comm'rs v. Geringer</u>, 297 F.3d 1108, 1115 n.6 (10th Cir. 2002)("[T]he district court's ruling [in which it declined to review the state law claims] comports with our general admonishment that district courts should dismiss state claims without prejudice after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial

-13-

. . . .").

Accordingly, the Court will remand all state law claims to state court.

**IT IS ORDERED** that the Defendants' Motion to Dismiss Pursuant to the Prison Litigation Reform Act is granted and judgment is entered on the pleadings dismissing the Plaintiff's federal claims without prejudice.[5]  The Court will enter Final Judgment and remand the state claims to the Thirteenth Judicial District, County of McKinley, State of New Mexico.  The Defendant may apply for costs, if any, under the Court's local rules.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

William G. Stripp
Ramah, New Mexico

    *Attorney for the Plaintiff*

P. Scott Eaton
James P Barrett
Eaton Law Offices, P.C.
Albuquerque, New Mexico

    *Attorney for the Defendants Management and Training Corporation*
     *and McKinley County*

---

[5] At the hearing, the Defendants' counsel urged the Court to dismiss the federal claim with prejudice.  As the Court explained at the hearing, "a dismissal based on lack of exhaustion should ordinarily be without prejudice." Fitzgerald v. Corr. Corp. of America, __ F.3d __, 2005 WL 827139 (10th Cir. Apr. 11, 2005)(citing Steele v. Fed. Bureau of Prisons, 355 F.3d at 1213). The Defendants have not offered a sufficient ground for the Court to deviate from this general rule.  Accordingly, the Court will dismiss the federal claim without prejudice.

91 Fed.Appx. 640                                                   Page 1
91 Fed.Appx. 640
(Cite as: 91 Fed.Appx. 640)

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
Rick TURRIETTA, Plaintiff-Appellant,
v.
Lawrence BARRERAS, Senior Warden, Valencia County Detention Center; John Doe, also known as Capt. Menjia, also known as C/O Diaz, Valencia County Detention Center, Defendants-Appellees.
No. 02-2343.

Feb. 5, 2004.

**Background:** State prisoner brought § 1983 action, alleging use of excessive force during strip search when he was pretrial detainee. The United States District Court for the District of New Mexico dismissed for failure to exhaust administrative remedies, and prisoner appealed.

**Holding:** The Court of Appeals, Murphy, Circuit Judge, held that failure to exhaust administrative remedies was not excused.
Affirmed.

West Headnotes

**Civil Rights 1319**
78k1319 Most Cited Cases
Requirement that pretrial detainee exhaust administrative remedies before bringing § 1983 action for use of excessive force during strip search was not excused, even though he was moved from county jail to county jail and kept in solitary confinement until deadline for filing grievance had passed; was never informed of grievance procedure, and monetary relief he was seeking was not available under applicable grievance policy; detainee was not actively prevented

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 640
91 Fed.Appx. 640
(Cite as: 91 Fed.Appx. 640)

Page 2

from filing grievance. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

*640 Rick Turrietta, pro se, Las Cruces, NM, for Plaintiff-Appellant.

Michael S. Jahner, Butkus Gay & Jahner, Albuquerque, NM, for Defendants-Appellees.

*641 Before MURPHY and PORFILIO, Circuit Judges, and BRORBY, Senior Circuit Judge.

### ORDER AND JUDGMENT [FN*]

FN* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

MURPHY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Plaintiff Rick Turrietta, a state inmate appearing pro se, appeals from the district court's order adopting the magistrate judge's recommendation to dismiss without prejudice his action brought under 42 U.S.C. § 1983 on the ground that he did not exhaust administrative remedies. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

Mr. Turrietta's claims arose from an incident occurring in October of 2000, while he was a pretrial detainee in the Valencia County Detention Center. He alleges that he was injured during a strip search during which jail personnel used excessive force, and that he was denied necessary medical and psychological treatment for those injuries. Following the incident at the Valencia County facility, he was transferred to the Santa Fe County Detention Facility. Both jails were run by the same private entity, and both maintained inmate grievance procedures. There is no dispute that Mr. Turrietta did not file a grievance or other administrative

complaint.

A jail detainee must exhaust administrative grievances before filing his civil rights lawsuit in federal court. 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail ... until such administrative remedies as are available are exhausted."). Exhaustion is mandatory. Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001). The exhaustion requirement applies to a single incident of unreasonable force. Porter v. Nussle, 534 U.S. 516, 532, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002). We review de novo a district court's determination that a prisoner failed to exhaust administrative remedies. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002). "[W]e will assume, without deciding, that [§ 1997e(a)] applies to private prisons." Beaudry v. Corr. Corp. of Am., 331 F.3d 1164, 1166 (10th Cir.2003), cert. denied, 540 U.S. 1118, 124 S.Ct. 1059, 157 L.Ed.2d 913 (2004).

Mr. Turrietta does not contest defendants' position that in order to exhaust administrative remedies, he was required to file a grievance with jail personnel, which he did not do. He asserts, however, that he should be excused from the exhaustion requirement. Because exhaustion under § 1997e(a) is not jurisdictional, Steele v. Fed. Bureau of Prisons, 355 F.3d 1204, 1206 (10th Cir.2003), we consider Mr. Turrietta's reasons for not filing a grievance.

Mr. Turrietta claims that he should be excused from the exhaustion requirement for the following reasons: (1) he was prevented from filing a grievance because he was moved from jail to jail and was kept in solitary confinement until the deadline for filing had passed; (2) he was never informed *642 of the grievance procedure; (3) administrative remedies were not "available" because they did not permit requests for money damages by jail detainees; (4) a jail warden told him that if he complained, he would be transferred to another jail, where he could not get any visits; and (5) the jail rules, including the grievance policy, were not in effect at the time of his incident, as evidenced by the various revision dates on the forms that prove they were back dated.

Addressing these claims in order, we first determine that Mr. Turrietta has not alleged facts to support his charge that he could not have filed a grievance while at the transferee jail or while in solitary confinement. The

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

91 Fed.Appx. 640
91 Fed.Appx. 640
(Cite as: 91 Fed.Appx. 640)

mere fact that he was transferred and confined does not direct the conclusion that he was thereby prevented from filing a grievance, particularly since he was able to submit, and did submit, requests for medical treatment during that time. *See Erikson v. Pawnee County Bd. of County Comm'rs,* 263 F.3d 1151, 1154-55 (10th Cir.2001) (holding claim insufficient because not supported by allegation of specific facts).

We also hold that the mandatory exhaustion requirement cannot be excused on the ground that the detainee was not informed of the grievance procedure. *Cf. Yousef v. Reno,* 254 F.3d 1214, 1221 (10th Cir.2001) (rejecting federal inmate's claim that authorities should have told him he needed to follow administrative procedures). "[W]e will not read futility *or other exceptions* into statutory exhaustion requirements where Congress has provided otherwise." *Booth,* 532 U.S. at 741 n. 6, 121 S.Ct. 1819 (emphasis added). "Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him. The statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them." *Chelette v. Harris,* 229 F.3d 684, 688 (8th Cir.2000).

The Supreme Court has rejected Mr. Turrietta's next argument, that a prisoner is excused from the exhaustion requirement where the relief requested is not available under the applicable grievance policy. *Booth,* 532 U.S. at 736, 741 & n. 6, 121 S.Ct. 1819.

As for his claim that a jail warden cautioned him that if he filed a grievance, he would risk being transferred, Mr. Turrietta concedes that this statement was made after the deadline to file a grievance had expired. Therefore, even if this allegation is true, the warden's statement did not prevent Mr. Turrietta from exhausting administrative remedies.

Finally, we decline to address Mr. Turrietta's charge that the grievance policy was not in effect because he did not present this argument to the district court. He has not cited to the record where this issue was raised in the district court, *see* Fed. R.App. P. 28(a)(7), (9)(A); 10th Cir. R. 28.2(C)(2), and our review has not revealed that he did. We do not consider claims presented for the first time on appeal. *Walker v. Mather (In re Walker),* 959 F.2d 894, 896 (10th Cir.1992).

Mr. Turrietta's motion to proceed without prepayment of costs and fees is granted. He is reminded that he is obligated to continue making partial payments until the entire fee has been paid.

The judgment of the district court is AFFIRMED. The mandate shall issue forthwith.

91 Fed.Appx. 640

**Briefs and Other Related Documents (Back to top)**

• 2003 WL 23531799 (Appellate Brief) Appellees' Response Brief (Jan. 01, 2003)Original Image of this Document (PDF)

• 02-2343 (Docket) (Dec. 18, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

108 Fed.Appx. 568                                                    Page 1
108 Fed.Appx. 568
**(Cite as: 108 Fed.Appx. 568)**

**Briefs and Other Related Documents**

This case was not selected for publication in the Federal Reporter.

Please use FIND to look at the applicable circuit court rule before citing this opinion. Tenth Circuit Rule 36.3. (FIND CTA10 Rule 36.3.)

United States Court of Appeals,
Tenth Circuit.
Douglas WEST, Plaintiff-Appellant,
v.
Dianne KOLAR, Law Library Supervisor; Felix Kelly, Investigation officer; T Jones, Sergeant disciplinary hearing officer; Reginald Hines, Warden; Kimberly Owens, Records; Melinda Guilfoyle, Designee; Ronald Ward, Director DOC State of Oklahoma, Defendants-Appellees.
**No. 03-6265.**

Aug. 17, 2004.

**Background:** State inmate brought pro se § 1983 action against prison officials, asserting claims related to law library access and his right to assist other inmates with legal work. The District Court granted summary judgment for officials on three claims, and dismissed remaining six claims without prejudice for failure to exhaust administrative remedies. Inmate appealed.

**Holdings:** The Court of Appeals, Murphy, Circuit Judge, held that:

(1) claims that were raised in inmate's misconduct proceedings but should have been exhausted through grievance procedure remained unexhausted for purposes of statutory exhaustion requirement for prisoner claims challenging conditions of confinement, and

(2) district court had to either dismiss complaint without prejudice in its entirety or allow inmate to dismiss unexhausted claims and proceed only with exhausted claims.

Vacated and remanded.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

West Headnotes

**[1] Civil Rights 1319**
78k1319 Most Cited Cases
Claims under § 1983 in which state inmate alleged deprivation of meaningful access to the courts by denial of law library access and asserted right to assist other inmates with their legal work concerned broader issues than those involved in misconduct proceedings against inmate, which were based on inmate's conduct in lying to prison staff about having court deadline and needing additional library time, and so should have been exhausted through corrections department's inmate grievance procedure, rather than raised as part of inmate's misconduct appeal, and therefore remained unexhausted for purposes of statutory exhaustion requirement for prisoner claims challenging conditions of confinement. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**[2] Federal Civil Procedure 1837.1**
170Ak1837.1 Most Cited Cases
When faced with state inmate's "mixed" § 1983 complaint, containing both exhausted and unexhausted claims, district court could either dismiss case in its entirety without prejudice, to permit inmate to exhaust his unexhausted claims, or give inmate opportunity to voluntarily dismiss his unexhausted claims and proceed on exhausted claims. 42 U.S.C.A. § 1983; Civil Rights of Institutionalized Persons Act, § 7(a), 42 U.S.C.A. § 1997e(a).

**\*568** Douglas West, Lexington, OK, pro se.

Linda K. Soper, Asst. Atty. General, Oklahoma City, OK, for Defendants-Appellees.

Before HENRY, MURPHY, and TYMKOVICH, Circuit Judges.

**\*569 ORDER AND JUDGMENT [FN\*]**

> FN\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

MICHAEL R. MURPHY, Circuit Judge.

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R.App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Douglas West, an inmate of the State of Oklahoma proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983. The district court granted summary judgment to defendants on three of the claims in his complaint. It dismissed his remaining claims because it found that West had not exhausted his administrative remedies as to those claims. While we agree with the district court that West did not exhaust all of the claims presented in his § 1983 complaint, a different disposition is required. The district court should have either dismissed the entire complaint to permit West to exhaust his administrative remedies or, in the alternative, have given West the opportunity to dismiss his unexhausted claims and to proceed solely on those he had exhausted. For this reason, we vacate the district court's order and remand.

West's complaint contains nine claims for relief. The magistrate judge assigned to this case concluded that West failed to exhaust his administrative remedies pertaining to Counts One, Two, Six, Seven, Eight, and Nine, and recommended that these counts therefore be dismissed without prejudice. He further recommended that summary judgment be granted to the defendants on the exhausted claims, Counts Three, Four, and Five. The district court adopted the magistrate judge's recommendation.

**1. West's challenge to exhaustion**

West challenges the district court's disposition of his complaint, contending that all of his claims have been exhausted. We review de novo the issue of whether West exhausted his administrative remedies. Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002). The pertinent statutory provision provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.A. § 1997e(a).

The Oklahoma Department of Corrections provides a multi-step inmate grievance procedure. See R. doc. 22,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ex. A. Having reviewed the record in this case, we agree with the district court that West failed to complete this grievance procedure as to the claims raised in Counts One, Two, Six, Seven, Eight, and Nine of his § 1983 complaint.

The district court concluded that no such exhaustion problem existed as to Counts Three, Four, and Five of West's complaint. These counts relate to a disciplinary procedure instituted against West for lying to staff about having a court deadline and needing additional library time. The grievance policy provides that "[m]isconduct reports received through the department disciplinary procedures may not be appealed through the grievance process," but are instead appealed through the misconduct appeals process. *Id.* at 2 *570 (Grievance Policy, Part II(b)(1)). The record reflects that West completed the misconduct appeals process as it relates to Counts Three, Four, and Five.

[1] West contends, however, that he also raised the remaining six counts in his § 1983 complaint during the course of the misconduct appeals process. The "Offender's Misconduct Appeal Form" reflects that he did present the essence of Counts One, Two, and at least a portion of Count Seven as part of his misconduct appeal. *See* R. doc. 23, Att. K. These counts, however, concerned much broader issues than those involved in the misconduct proceedings. Count One charged a deprivation of meaningful access to the courts by denial of law library access. Count Two asserted West's right to assist other inmates with their legal work. The first portion of Count Seven asserted a denial of law library access. These counts should have been exhausted through the grievance procedure rather than as part of the misconduct appeal, and they therefore remain unexhausted for purposes of § 1997e(a). The remainder of Count Seven (pertaining to space in the library, the ability to check out law library books, and the posted law library hours) and the claims raised in Counts Eight and Nine were not even raised in the misconduct appeal and therefore also remain unexhausted.

**2. Proper disposition of the complaint**

[2] West's complaint is a "mixed" complaint, containing both exhausted and unexhausted claims. We recently determined, analogizing to the rule for habeas corpus cases established in *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), that where an inmate files a "mixed" § 1983 complaint,

"the district court must ordinarily dismiss the entire action without prejudice" to permit the inmate to exhaust his unexhausted claims. *Ross v. County of Bernalillo,* 365 F.3d 1181, 1190 (10th Cir.2004). It also follows from the adaptation of the rule in *Rose v. Lundy* that the district court may permit an inmate who has filed a mixed complaint in a § 1983 complaint to dismiss voluntarily his unexhausted claims and to proceed only on those he has exhausted. *See Rose,* 455 U.S. at 510, 455 U.S. 509. For these reasons, we must vacate the district court's order, to the extent it granted summary judgment on West's Counts Three, Four, and Five, and remand for either complete dismissal for failure to exhaust or to give West an opportunity to voluntarily dismiss his unexhausted claims.

The judgment of the district court is VACATED, and the case is REMANDED for further proceedings in accordance with this order and judgment.

108 Fed.Appx. 568

**Briefs and Other Related Documents (Back to top)**

• 2003 WL 24031952 (Appellate Brief) Brief of Defendant Appellees (Dec. 29, 2003)Original Image of this Document (PDF)

• 2003 WL 24031951 (Appellate Brief) Appellant Petitioner's Opeaing Brief (Dec. 11, 2003)Original Image of this Document (PDF)

• 03-6265 (Docket) (Oct. 01, 2003)

END OF DOCUMENT